## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

_____

**ANTHONY and MELISSA STONECIPHER**,

     Plaintiffs,

     v.                                                                                    Civ. No. 11-417 BB/GBW

**SPECIAL AGENTS Carlos VALLES, John
ESTRADA, David TABULLO, McCARTHY,
KING, JORGENSEN, Bureau of Alcohol,
Tobacco, Firearms, and Explosives; Alamogordo
City Police Department Officer Luis
HERRERA, United States Marshals John DOEs,
Doña Ana County Sheriff's Officers John DOEs,
BOARD OF COUNTY COMMISSIONERS OF
DONA ANA COUNTY, UNITED STATES OF
AMERICA,**

     Defendants.

### MEMORANDUM OPINION

     THIS MATTER is before the Court for consideration of (1) a motion to dismiss Count

VII for lack of subject matter jurisdiction filed by the United States [Doc. 21], (2) a partial

motion to dismiss for failure to state a claim filed by various agents of the Bureau of Alcohol,

Tobacco, Firearms, and Explosives ("ATF") [Doc. 19], and (3) a motion to dismiss filed by two

Doña Ana County Sheriff's officers (the "Deputies) and the Board of County Commissioners of

Doña Ana County (the "County") [Doc. 34].  Having considered the submissions of the parties

and the applicable law, the Court will issue an order consistent with this opinion.

**Factual Background**

     On May 17, 2010, Special Agent Carlos Valles submitted an application for a search

warrant with the United States District Court for the District of New Mexico.   Doc. 23, Ex.1.  On

the face of the warrant, Agent Valles indicated that the search related to an alleged violation of

one statute: 18 U.S.C. § 922(g)(9) (prohibiting any person convicted of a misdemeanor crime of

domestic violence from shipping or transporting in interstate or foreign commerce a firearm).  *Id.*
In the warrant application, Agent Valles described an investigation ATF had conducted into
suspected firearms and explosives violations concerning the Plaintiffs, Anthony and Melissa
Stonecipher.  *Id.* at pp. 5-6.  Specifically, Agent Valles stated that Anthony Stonecipher had been
convicted of a domestic-assault misdemeanor on April 16, 2007.  *Id.* at p. 6, ¶ 6.  To verify this
conviction, Agent Valles sought and received a certified copy of a judgment and sentence from
the 14th Judicial Circuit Court, County of Randolph, Missouri.  *Id.* at p. 7, ¶ 8.  Because Valles
sold two guns through an online website, "gunbroker.com," Agent Valles believed that Anthony
Stonecipher had violated 18 U.S.C. § 922(g)(9).  *Id.* at p. 9, ¶ 20.  Agent Valles also believed that
Stonecipher had violated 28 U.S.C. § 5845(d) for receiving or possessing a firearm not registered
to him in the National Firearms Registration and Transfer Record.  *Id.* at pp. 7-8, ¶ 27.

In the warrant application, Agent Valles also detailed facts concerning Anthony
Stonecipher's sale and manufacture of exploding targets.  *Id.* at p. 4, ¶ 14.  Agent Valles
explained that Anthony Stonecipher had sold him two 12-ounce soda cans filled with explosive
material.  *Id.* at ¶ 15.  Agent Valles sent these two cans to ATF's Forensic Science Laboratory
which confirmed that they were filled with explosive material.  *Id.* at ¶ 16.   He further stated that
he would be requesting ATF's determination as to whether the exploding targets fit the criteria of
a destructive device as defined in 26 U.S.C. § 5845(f).  *Id.*   Based on this information, Agent
Valles believed that Anthony Stonecipher had violated 18 U.S.C. § 842(a)(1) (prohibiting
persons from engaging in the business of importing, manufacturing, or dealing in explosive
materials without a license).  *Id.* at pp. 7-8, ¶ 27.

On May 17, 2010, United States Magistrate Judge Karen Molzen issued a federal search
warrant to Agent Valles.  Doc. 23, Ex.1, p. 13.  The search warrant identified the Stoneciphers'
residence in Attachment A as the place to be searched.  *Id.* at p.2.  The warrant also incorporated

Attachment B which described the items to be seized.  *Id.* at pp. 3-4.  Among other things, Attachment B listed all firearms and explosive materials related to the listed violations.  *Id.*

The next day, Agent Valles along with five other named ATF agents (collectively the "Agents"), two Doña Ana County Sheriff's officers (the "Deputies), an officer from the Alamagordo City Police Department, and unknown United States Marshals executed the search warrant at the Stoneciphers' residence in Otero County.  According to the Complaint, these "defendants" took Anthony Stonecipher down to the dirt outside the residence and handcuffed him.  Doc. 18, ¶ 41.  The defendants then seized Mrs. Stonecipher, pointed weapons in her face, extracted her from the residence, and handcuffed her.  *Id.* at ¶¶ 36-38.  The defendants then proceeded to search the residence and allegedly seized items that went beyond the search warrant, including personal adult toys, computer files, and family photographs.  *Id.* at ¶ 33.  According to the Complaint, the Deputies also allegedly searched the residence with trained narcotics dogs, (*id.* at 148-49), despite the fact that the search warrant did not authorize a search for drugs or narcotics (doc. 23, Ex.1, p. 3-4).

 While the defendants were searching the residence, Anthony Stonecipher allegedly told Agent Valles and "many other agents" that he had a Suspended Imposition of Sentence ("SIS"), not a conviction for domestic assault.  Doc. 18, at ¶ 52.  Anthony also read to the Agents a letter from his attorney and a National Criminal Information Center ("NCIC") report stating that Anthony did not have a conviction for domestic assault and thus did not have a firearms disability.  *Id.*  Agent Valles apparently responded that "attorneys are often wrong" and proceeded to arrest Anthony Stonecipher and continue the search of the residence.  *Id.* at ¶ 53.  The Complaint also alleges that the defendants did not leave a copy of the probable cause statement, oath, or affirmation supporting the search warrant.  Doc. 18, ¶ 90.

After the search was completed, the defendants transported Anthony Stonecipher to the Doña Ana County Detention Center (the "Detention Center").  There, according to the

Complaint, Anthony Stonecipher was subjected to a strip search.  *Id.* at ¶ 46.  He was also denied his prescription medication, *id.* at ¶ 13, and the mandated phone calls at the Detention Center, *id.* at ¶ 134.

On May 25, 2010, Magistrate Judge Lourdes A. Martinez dismissed the single charge against Anthony Stonecipher for violating 18 U.S.C. § 922(g)(9).  Doc. 23, Ex. 3.  The prosecuting United States attorney agreed that Anthony only had a SIS which did not result in a firearms disability.  Doc. 23, Ex. 3 (*United States v. Stonecipher*, 2:10-MJ-1487 (D. N.M.), Criminal Clerk Minutes, dated May 25, 2010).

Plaintiffs subsequently filed the instant civil action.  Plaintiffs bring a mix of eleven claims against the Agents, Deputies, ATF, the United States,[1] the County, an officer with the City of Alamogordo police department, the City of Alamogordo,[2] and unknown United States Marshals.[3]  With few exceptions, the Complaint does not specify which law enforcement officers did what, but instead directs the separate counts at all defendants.  Nine of the Counts (Counts I, II, III, IV, V, VI, VIII, IX, and X) are based on federal law, while the remaining two counts (Counts VII and XI) are based on state law.

---

[1]Although the Plaintiffs did not name the United States as a defendant, the United States has been substituted into these proceedings with respect to Plaintiffs' common law tort claims against the Agents.

[2] On December 14, 2011, the parties entered into a stipulation dismissing the City of Alamorgordo.  Doc. 54.

[3] The Plaintiffs have amended the complaint twice.  The Second Amended Complaint references the allegations in the First Amended Complaint and adds some factual allegations concerning claims against the Deputies and the County.  Doc. 18.  Because the Second Amended Complaint incorporates by reference paragraphs 1-146 of the First Amended Complaint, the Court will cite paragraphs 1-146 of the First Amended Complaint as though they were paragraphs 1-146 of the Second Amended Complaint.

### I. United States' Motion to Dismiss for Lack of Subject Matter Jurisdiction

On May 13, 2011, the United States removed the case to federal court and substituted itself as a defendant with respect to the common law torts alleged against the Agents in Count VII.[4]  The United States now moves to dismiss Count VII for lack of subject matter jurisdiction.

### A. Standard of Review

The federal courts are courts of limited jurisdiction.  *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a party to move to dismiss a claim for "lack of jurisdiction over the subject matter."  Here, the United States brings a factual attack on the Complaint's allegations as to subject matter jurisdiction. Doc. 22, at p.4; *see Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).  Because this attack is not intertwined with the merits of the case, the instant motion remains a motion to dismiss pursuant to rule 12(b)(1).  *Id.* at 1003.

### B.  Analysis

The state-law tort claims against the United States must be dismissed based on sovereign immunity.  It is a well-established principle that "[a]s a sovereign, the United States 'is immune from suit save as it consents to be sued and the terms of its consent to be sued in any court define the court's jurisdiction to entertain the suit.'" *Lee v. United States*, 980 F.2d 1337, 1340 (10th Cir. 1992) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)).  The Federal Tort Claims Act ("FTCA") provides a limited waiver for actions against the United States sounding in tort.  28 U.S.C. §§ 1346(b), 2671-2680  Section 2675(a) requires that claims for damages against the government be presented to the appropriate federal agency by filing "(1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a

---

[4]The United States Attorney certified that the Agents were acting within the scope of their employment.  The Complaint similarly acknowledges that all of the Agents were acting in the scope of their employment.  Doc. 18, ¶¶ 2, 3, 5.

sum certain damages claim." *Bradley v. U.S. ex rel. Veterans Admin.*, 951 F.2d 268, 270 (10th Cir. 1991).  In the present case, Plaintiffs do not allege that they ever filed an administrative claim with the ATF pursuant to the procedure set forth in section 2675(a).  Eleaner R. Loos, associate chief counsel for the litigation division of ATF, further certifies that there are no records of any tort claim filed by Plaintiffs with ATF.  Doc. 22, Ex. 4, ¶4 (affidavit of Eleaner Loss).  Plaintiffs' failure to file such a claim precludes this Court from exercising jurisdiction. *McNeil v. United States*, 508 U.S. 106, 113 (1993) ("The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies."); *Powell v. Nunley*, 2009 WL 743045, *2 (W.D. Okla. 2009) (dismissing two *Bivens* claims against ATF agents for failure to exhaust administrative remedies).

Plaintiffs dispute this result on the grounds that they have alleged intentional state-law torts against the United States and Agents that fall outside of the FTCA.[5]  Plaintiffs thus appear to argue that they did not have to comply with the procedural requirements of the FTCA.  This argument is unavailing for two reasons.  First, Section 2680(h) states that the FTCA applies "to acts or omissions of investigative or law enforcement officers of the United States Government . . . arising . . . out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution."  28 U.S.C. §2680(h).  To the extent Plaintiffs' state-law tort claims fit within this list of wrongful acts, Plaintiffs have failed to exhaust their administrative remedies as required by the FTCA.  Alternatively, to the extent Plaintiffs' state-law tort claims do not fit within this list and thus fall outside of the FTCA, Plaintiffs lack a waiver of sovereign immunity. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994) ("Absent waiver, sovereign immunity shields federal

---

[5] Plaintiffs also appear to argue that the New Mexico Tort Claims Act ("NMTCA") waives the sovereign immunity of the United States.  Doc. 26, at 12.  The NMTCA, however, has no effect on the sovereign immunity of the United States or its officers as only Congress can waive the federal government's sovereign immunity. *Wagoner County Rural Water Dist. No. 2 v. Grand River Dam Auth.*, 577 F.3d 1255, 1260 (10th Cir. 2009); *Wyoming v. United States*, 279 F.3d 1214, 1225 (10th Cir. 2002).

government and its agencies from suit.").  Either way, this Court lacks jurisdiction over Plaintiffs' state-law tort claims against the United States and the Agents.

## II. Agents' Partial Motion to Dismiss Federal Constitutional Claims

Pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), Plaintiffs bring a series of claims against the Agents for violating their constitutional rights under the First, Second, and Fourth Amendments.  The Plaintiffs also bring a set of claims against the Agents for violating their constitutional rights under the New Mexico State Constitution.

## A. Standard of Review and Materials Reviewed in the Instant Partial Motion to Dismiss

Under rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).  The sufficiency of a complaint is a question of law, and when considering and addressing a rule 12(b)(6) motion, a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor.  *See Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006); *Hous. Auth. of Kaw Tribe v. City of Ponca City*, 952 F.2d 1183, 1187 (10th Cir. 1991).

A complaint challenged by a rule 12(b)(6) motion to dismiss does not require detailed factual allegations, but a plaintiff's obligation to set forth the grounds of his or her entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.*; *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) ("The [Supreme] Court

explained that a plaintiff must 'nudge his claims across the line from conceivable to plausible' in order to survive a motion to dismiss.") (quoting *Twombly*, 550 U.S. at 570).

Generally, in ruling on a rule 12(b)(6) motion to dismiss, a court must review the sufficiency of the complaint based on its contents alone. *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010); *Mobley*, 40 F.3d at 340. There are, however, a few recognized exceptions to this restriction. *Id.* "In addition to the complaint, the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002). Here, the complaint references the search warrant issued by Magistrate Judge Molzen. Doc. 18, ¶ 30. The complaint also implicitly references the search warrant application and the affidavit offered by Agent Valles. *Id.* Because there is no dispute regarding the authenticity of these documents, and because these documents are central to Plaintiffs' claims, the Court will consider them in evaluating the sufficiency the Complaint. *Jacobsen*, 287 F.3d at 941; *GFF Corp. v. Assoc. Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997); *Emert v. Warner*, 2009 WL 310814, *3 (D. Colo. 2009).

The Court also takes judicial notice of the related court proceedings, and in particular the Court's order in *United States v. Stonecipher*, 2:10-MJ-1487 (D. NM), dismissing the criminal charge brought against Plaintiff Anthony Stonecipher under 18 U.S.C. §922(g)(9). *Gee*, 627 F.3d at 1186; *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979) ("federal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to the matters at issue").

**B. Fourth Amendment**

The Agents move to dismiss Counts I-IV and VI[6] on the grounds that they had a valid warrant and acted with probable cause to believe that Plaintiff Anthony Stonecipher had committed a crime; thus, the Agents claim that they were legally justified in entering the residence, conducting the search, detaining the Stoneciphers, and initiating the criminal process. Moreover, even if the search warrant was invalid due to faulty information provided by Valles concerning Anthony Stonecipher's alleged conviction for domestic assault, the Agents argue that they are entitled to qualified immunity.

To defeat the defense of qualified immunity, Plaintiffs must meet the Tenth Circuit's "heavy two-part burden." *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) (quotations omitted). First, the Plaintiffs must come forward with allegations sufficient to show "that the defendants' actions violated a constitutional or statutory right." *Id.* Then, the Plaintiffs must establish that "the right at issue was clearly established at the time of the defendants' alleged unlawful conduct." *Id.* The Court applies this two-step inquiry to determine whether the five counts brought by Plaintiffs under the Fourth Amendment survive the Agents' motion to dismiss.

First, the Plaintiffs have established that the Agents violated their constitutional right to be free from unreasonable searches and seizures. The Fourth Amendment generally prohibits law enforcement from conducting a search without a valid warrant supported by probable cause. *U.S. v. Olguin-Rivera*, 168 F.3d 1203, 1204-1205 (10th Cir. 1999) (citing *National Treasury Employees Union v. Von Raab*, 489 U.S. 656, 665 (1989) and *Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987)). Probable cause, in turn, requires "more than mere suspicion but less evidence than is necessary to convict." *United States v. Burns*, 624 F.2d 95, 99 (10th Cir. 1980). An affidavit in support of a search warrant must contain facts sufficient to lead a prudent person to believe that a

---

[6] The Agents do not move to dismiss Count V alleging use of excessive force.

search would uncover contraband or evidence of criminal activity.  *United States v. Danhauer*, 229 F.3d 1002, 1006 (10th Cir. 2000).  Whether a warrant is supported by probable cause is a question of law. *United States v. Gonzales*, 399 F.3d 1225, 1228 (10th Cir. 2005).

In the instant case, Magistrate Judge Molzen issued a search warrant for the Stoneciphers' residence.  Doc. 23, Ex. 1, at 13.[7]  The warrant also identified the items to be seized in Attachment B.  *Id.*  Nonetheless, the Plaintiffs allege that the search warrant lacked probable cause because Agent Valles provided unreliable and faulty information in his application for the search warrant.  Doc 18, at ¶ 89.  More specifically, Plaintiffs claim that Agent Valles intentionally or with reckless disregard for the truth stated that Anthony Stonecipher had a prior conviction for domestic assault, thereby establishing probable cause for a violation of 18 U.S.C. § 922(g)(9) (possession of a firearm by a prohibited person).  *Id.*  Factually, however, Plaintiffs allege that Anthony Stonecipher was not convicted of any such crime, but rather agreed to a Suspended Imposition of Sentence ("SIS").  Moreover, Plaintiffs note that Anthony Stonecipher's SIS does not count as a disabling conviction for the purposes of 18 U.S.C. § 922(g)(9), a point confirmed by the Court when it dismissed the charge against Anthony Stonecipher.  *See* Doc. 23, Ex. 3 (*United States v. Stonecipher*, 2:10-MJ-1487 (D. N.M.), Criminal Clerk Minutes, dated May 25, 2010).  Plaintiffs thus contend that the information regarding Anthony Stonecipher's SIS vitiates probable cause for the search warrant.  Accordingly, Plaintiffs claim that the Agents unlawfully entered the residence, conducted the search, detained the Stoneciphers, and initiated the criminal process without a valid warrant or probable cause.

---

[7] While the Plaintiffs allege that the Agents conducted a residential search pursuant to a "facially defective" warrant, (Doc. 18, ¶¶ 71, 72), these allegations are conclusory and devoid of factual development.  Accordingly, the Court will not consider them in the instant motion to dismiss, *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009), but rather will focus on whether the warrant lacked probable cause.

The Agents respond that Valles simply made a mistaken conclusion of law regarding Anthony Stonecipher's prohibited status.  The Agents further argue that Valles did not learn about this mistake until the Court determined on May 25, 2010 that Anthony Stonecipher's SIS did not constitute a disabling conviction under 18 U.S.C. § 922(g)(9).  Thus, the Agents argue that Valles' mere negligence or mistake of law does not invalidate the search warrant or the search performed on May 18.  Rather, the Agents maintain that Valles had probable cause – at the time of the search – to believe that Anthony Stonecipher had violated § 922(g)(9).  Thus, even if Agent Valles was ultimately wrong about Anthony Stonecipher's alleged conviction, the Agents are entitled to qualified immunity and thus not liable.  *See, e.g.*, *Anderson v. Creighton*, 483 U.S. 635, 641 (1987) (holding that, under the doctrine of qualified immunity, "law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and . . . in such cases those officials . . . should not be held personally liable.").

Qualified immunity allows "ample room for mistaken judgments" protecting "all but the plainly incompetent or those who knowingly violate the law."  *Malley v. Briggs*, 475 U.S. 335, 341, 343 (1986).  Allegations of negligent or innocent mistakes are insufficient to invalidate a warrant; the affiant must omit material information knowingly, intentionally, or in reckless disregard for the truth.  *Bruner v. Baker*, 506 F.3d 1021, 1027 (10th Cir. 2007).  At this stage of the proceedings, it is unclear whether Agent Valles omitted the information about Anthony Stonecipher's SIS out of mere negligence or whether the omission was intentional or the result of a reckless disregard for the truth.  Accepting the allegations in the Complaint as true, *see Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006), the Court will assume, for the purpose of this analysis only, that Agent Valles intentionally or with reckless disregard for the truth stated that Anthony Stonecipher had a conviction for domestic assault and omitted the fact that the charge was actually a SIS.

11

The issue then is whether the omitted information, if included, would negate probable cause for the search of the Stoneciphers' residence. *United States v. Basham*, 268 F.3d 1199, 1204 (10th Cir. 2001) ("Where a false statement is made in an affidavit for a search warrant, the search warrant must be voided if the affidavit's remaining content is insufficient to establish probable cause."); *Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996); *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). Thus, Agent Valles' affidavit must be read as if it mentioned the fact that Anthony Stonecipher had a SIS and excluded the allegation that he had a conviction for domestic assault. Both parties agree that a SIS does not result in a firearms disability that would provide probable cause for a violation of 18 U.S.C. §922(g)(9). *See United States v. Stonecipher*, 2:10-MJ-1487 (D. N.M.). Moreover, even examining "the totality of the circumstances set forth" in Valles' affidavit, *see Illinois v. Gates*, 462 U.S. 213, 238 (1983), the Court is unable to find a "substantial basis for concluding that probable cause existed." *United States v. Rowland*, 145 F.3d 1194, 1204 (10th Cir. 1998) (quotations omitted).[8] Accordingly, the Court concludes that the Complaint is sufficient to set forth a claim that the Agents violated Plaintiffs' Fourth Amendment rights by entering the residence, conducting a search, detaining the Stoneciphers, and instigating the criminal process without a valid warrant or probable cause.

_____

[8] The Agents argue that Valles' affidavit also establishes probable cause to believe that Anthony Stonecipher violated 18 U.S.C. § 841 (manufacturing explosives without a license), § 842 (distributing explosives without a license), and 26 U.S.C. §§ 5845 and 5861 for possessing firearms in violation of the National Firearms Act. The Agents thus argue that they had probable cause, independent of Valles' inaccurate statement about Anthony Stonecipher's alleged prior conviction for domestic assault, to search the residence. The Agents, however, fail to fully develop this argument in their partial motion to dismiss or identify the evidence in Valles' affidavit establishing probable cause for these additional violations. For example, it is unclear how Anthony Stonecipher's "offer" to sell exploding targets to Valles establishes probable cause for a violation of 18 U.S.C. §§ 841, 842. Significantly, at the time Agent Valles submitted the warrant application to Magistrate Judge Molzen, he had yet to receive confirmation from the ATF that the soda can fit the criteria of a destructive device as defined in 26 U.S.C. § 5845(f). Doc. 23, Ex. 1, p. 5, ¶ 16. Similarly, it is unclear how Anthony Stonecipher's "discussion" with Agent Valles about how to convert a semi-automatic firearms into automatic firearms provides probable cause for a violation of any of the listed statutes in the warrant application.

The Plaintiffs have also demonstrated that the Agents violated clearly established law by searching the residence pursuant to a search warrant lacking probable cause. *See Manzanares v. Higdon*, 575 F.3d 1135, 1146 (10th Cir. 2009) ("It has been clear for nearly thirty years that a warrantless entry into a home is presumptively unreasonable."). Moreover, Agent Valles' inclusion of material false statements or omissions in the search warrant affidavit, if ultimately true, violated clearly established law. *Franks*, 438 U.S. at 155-56 (holding that if it is established that a false statement made knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in a search warrant affidavit, the warrant must be voided if the false statement was necessary to the finding of probable cause); *Stewart v. Donges*, 915 F.2d 572, 582-83 (10th Cir. 1990) ("we hold that at the time defendant submitted his affidavit and arrested plaintiff [in 1986], it was a clearly established violation of plaintiff's Fourth and Fourteenth Amendment rights to knowingly or recklessly omit from an arrest affidavit information which, if included, would have vitiated probable cause"). Therefore, the Court concludes that Plaintiffs have overcome the defense of qualified immunity; thus, Count I-IV and VI survive the Agents' motion to dismiss.

Nonetheless, the Agents argue that they acted in good faith and relied on Magistrate Judge Molzen's determination of probable cause. Because their good faith reliance on the warrant would make any seized evidence admissible, *see United States v. Leon*, 468 U.S. 897 (1984), the Agents argue that their good faith precludes a finding that the search violated the Fourth Amendment. This argument is based on the Agent's position that Valles conducted due diligence in the investigation of the Stoneciphers and honestly believed the information he presented to Magistrate Judge Molzen. Doc. 23, at p. 8.

The Supreme Court, however, made it clear that *Leon*'s good-faith exception does not apply "if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard

13

of the truth." *Leon*, 468 U.S. at 923.  Here, the Plaintiffs have alleged that Agent Valles intentionally or with reckless disregard for the truth submitted false or inaccurate information in his affidavit for the search warrant.  Because the Court must accept these allegations as true at this stage of the proceedings, the Court concludes that the Agent Valles cannot rely on *Leon*'s good-faith exception as a basis to dismiss Counts I-IV and VI.  Similarly, the Court concludes that the remaining Agents cannot rely on *Leon*'s good faith exception to dismiss Counts I-IV and VI.[9]

## C. Second Amendment

In Count VIII, Plaintiffs allege that the Agents deprived them of their Second Amendment right to bear arms.  *See Heller v. District of Columbia*, 554 U.S. 570 (2008).  The basis of their claim is that they "had the right to legally possess that which was considered contraband by agents."  Doc. 18, ¶¶ 117-18.  The Plaintiffs, however, fail to cite any cases extending a *Bivens* cause of action to the Second Amendment.  To the contrary, since recognizing a cause of action for Fourth Amendment violations in *Bivens*, 403 U.S. at 388, the Supreme Court  has only created two more non-statutory, *Bivens* actions for constitutional violations: (1) for unlawful discrimination under the equal protection components of the Due Process Clause of the Fifth

---

[9] Notably, the remaining Agents do not separately argue that they are entitled to *Leon*'s good-faith exception. *See*, *e.g.*, Doc. 23, p. 8; Doc. 30, pp. 3-4.  Accordingly, the Court declines to distinguish between Agent Valles and the remaining Agents for the purposes of determining whether *Leon*'s good-faith exception warrants dismissal of Counts I-IV and VI.  In fact, even if the remaining Agents did argue that they were separately entitled to *Leon*'s good-faith exception, such an argument would be unavailing in light of the allegations in the Complaint.  Specifically, the Complaint alleges that Anthony Stonecipher told Agent Valles and "many other agents" that he was not prohibited from possessing a firearm because he had a SIS, not a conviction for domestic assault.  Doc. 18, ¶ 52.  Anthony Stonecipher also read to "many other Agents" the letter from his attorney and his NCIC report confirming that he had a SIS.  *Id.*  Accepting these allegations as true, the remaining Agents (i.e., the "many other agents") knew that Anthony Stonecipher had not violated 18 U.S.C. § 922(g)(g).  Accepting these allegations as true, the remaining Agents arguably should have realized that there was "no reasonable grounds for believing that the warrant was properly issued."  *Leon*, 468 U.S. at 923.  Thus, they would not be entitled to *Leon*'s good-faith exception for the purposes of the instant motion to dismiss.

Amendment, *Davis v. Passman*, 442 U.S. 228, 236 (1979); and (2) for Eighth Amendment violations caused by prison officials, *Carlson v. Green*, 446 U.S. 14 (1980).  The Supreme Court has rejected all other attempts to expand *Bivens*.

Recently, in *Wilkie v. Robbins*, 551 U.S. 537, 549–50 (2007), the Court discussed the two-step process for determining whether to recognize a *Bivens* remedy: first, the court must examine "whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages"; and second, the court "must make the kind of remedial determination that is appropriate for a common-law tribunal, paying particular heed, however, to any special factors counseling hesitation before authorizing a new kind of federal litigation." *Id.*  Based on this two-step process, the *Wilkie* Court ultimately declined to permit a *Bivens* remedy for a Fifth Amendment retaliation claim brought against Bureau of Land Management officials.  *Id.* at 562.

Applying *Wilkie*'s first step to the instant case, the Court is not convinced that a *Bivens* remedy should be afforded to Plaintiffs.  Other existing remedies are readily available to the Plaintiffs.  For example, if the Agents knew that Anthony Stonecipher did not have a disabling conviction but nonetheless seized his weapons – precisely what the Plaintiffs allege in the Complaint – then Plaintiffs would have a *Bivens* claim under the Fourth Amendment for an illegal seizure of the firearms.  Because the Plaintiffs already have an avenue for redress, the Court declines to extend *Bivens* to the instant case.  *See Lundstrom v. Romero*, 616 F.3d 1108, 1125 (10th Cir. 2010) ("So long as the plaintiff had an avenue for some redress, bedrock principles of separation of powers foreclosed judicial imposition of a new substantive liability."); *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 69 (2001).

Even if there was a *Bivens* cause of action for the deprivation of Second Amendment rights, however, Plaintiffs have failed to overcome the hurdle of qualified immunity and demonstrate that the Agents violated a clearly established constitutional right.  As explained in

15

*Wilson v. Layne*, "'clearly established' for purposes of qualified immunity means that '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" 526 U.S. 603, 614-15 (1999) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  Here, Plaintiffs argue that the Agents violated their right to bear arms as clearly established in *Heller*.  The question though is not whether there is a general right to bear arms, as established in *Heller*, but more specifically whether the Agents should reasonably have known that seizure of Plaintiffs' weapons deprived him of his constitutional right to bear arms.  Plaintiffs have failed to cite any caselaw establishing such a violation.  Because the Court is not convinced that the right was clearly established at the time of the incident, the Agents are entitled to qualified immunity, further justifying dismissal of Count VIII.

## D. First Amendment

In Count IX, Plaintiffs claim that the Agents violated their First Amendment right to free speech.  Specifically, Plaintiffs allege that the Agents wrongfully arrested them and subsequently prosecuted Anthony Stonecipher in retaliation for their refusal to answer the Agents' questions, for asserting their Second Amendment rights, and for challenging the propriety of the search on the grounds that Anthony Stonecipher only had a SIS, not a disabling conviction for domestic assault.  Because the Agents raise the defense of qualified immunity, the Plaintiffs must demonstrate that the Agents violated a constitutional right and that the right was clearly established at the time of the allegedly unlawful conduct.  *Medina*, 252 F.3d at 1128.[10]

---

[10] Although the Agents argue that a *Bivens* cause of action does not extend to the Second Amendment, *see supra* section II.C, they do not challenge Plaintiffs' First Amendment claim on the grounds that it is not cognizable under *Bivens*.  In the recent decision of *Iqbal*, *supra*, 129 S. Ct. at 1948, however, the U.S. Supreme Court "assume[d], without deciding, that respondents' First Amendment claim [wa]s actionable under *Bivens*."  The *Iqbal* Court further noted that it had not extended *Bivens* liability to First Amendment retaliation claims.  *Id.* (citing *Bush v. Lucas*, 462 U.S. 367 (1983)).  As a result of *Iqbal*, courts have expressed concern that "it is far from clear that a *Bivens* action can arise out of an alleged First Amendment violation."  *Eusi v.*

"To establish a First Amendment retaliation claim, a plaintiff must show that (1) he was engaged in constitutionally protected activity, (2) the government's actions caused him injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the government's actions were substantially motivated as a response to his constitutionally protected conduct."  *Nielander v. Bd. of Cnty. Comm'rs*, 582 F.3d 1155, 1165 (10th Cir.2009). The Agents do not move to dismiss Count IX on the grounds that the Plaintiffs have failed to establish the first two *Nielander* factors.  Rather, the Agents move to dismiss on the grounds that the Plaintiffs have failed to establish a causal connection between the Stoneciphers' speech and the Agents' allegedly retaliatory conduct.  *Id.*  Quite simply, the Agents argue that they obtained a search warrant, had a predetermined plan to search the residence, and thus would have arrested the Stoneciphers and charged Anthony Stonecipher under 18 U.S.C. §922(g)(9) regardless of what he or his wife said during the search.  The Agents thus urge us to conclude that the Stoneciphers' speech, even if protected, cannot possibly be a "substantial[] motivat[ion]" for their conduct as required by the third *Nielander* factor.  *Id.*

The Complaint, however, alleges that the Agents charged Anthony Stonecipher under 18 U.S.C. § 922(g)(9) in retaliation for his free speech and without probable cause.  Doc. 18, at ¶123.  These allegations are sufficient to allege a causal connection for the purposes of a First Amendment claim.  *See Hartman v. Moore*, 547 U.S. 250, 259 (2006) (holding that the absence

---

*Martinez*, 2011 WL 4502063, *2 n. 5 (D. Colo. 2011).  What is more, one court recently refused to extend *Bivens* to a prisoner's First Amendment claim for denial of access to the courts.  *See Allmon v. Wiley*, 2011 WL 4501941, *4 (D. Colo. 2011).

The Tenth Circuit, however, has expressly extended *Bivens* beyond the Fourth Amendment to include causes of action based on the First Amendment.  *Nat'l Commodity and Barter Ass'n v. Archer*, 31 F.3d 1521, 1527 (10th Cir. 1994) (holding "that if claims of violations of First or Fourth Amendment rights are proven, then a *Bivens* remedy may be afforded to the plaintiffs for recovery of damages for such constitutional wrongs").  Because the Agents have failed to cite any binding authority to the contrary, this Court will proceed on the assumption that *Bivens* extends to the Plaintiffs' First Amendment claim against the Agents.

of probable cause is a necessary element of a retaliatory prosecution case).  The Complaint also alleges that the Agents arrested the Stoneciphers in retaliation for Anthony Stonecipher's comments challenging the search.  *Id.* at ¶ 123.  Thus, even if the Agents did have a valid search warrant and probable cause to arrest, they could still be liable for the arrest it was nonetheless retaliatory as alleged by the Plaintiffs.  *Howards v. McLaughlin*, 634 F.3d 1131, 1146 (10th Cir. 2011) (The Tenth Circuit has "recognized in the context of an arrest that '[a]n act taken in retaliation for the exercise of a constitutionally protected right is actionable under § 1983 even if the act, when taken for a different reason, would have been proper.'") (quoting *DeLoach v. Bevers*, 922 F.2d 618, 620 (10th Cir.1990)).  As the Court must accept the allegations in the Complaint as true, the Court concludes that the Plaintiffs have established a claim that the Agents violated their First Amendment right.

The Plaintiffs must also establish that the Agents violated a clearly established right to overcome the defense of qualified immunity.  The Tenth Circuit has previously held that First-Amendment retaliation claims are clearly established.  *See Buck v. City of Albuquerque*, 549 F.3d 1269, 1293 (10th Cir. 2008); *Mimics, Inc. v. Village of Angel Fire*, 394 F.3d 836, 848 (10th Cir. 2005) ("It has long been clearly established that the First Amendment bars retaliation for protected speech and association.") (citing *Crawford–El v. Britton*, 523 U.S. 574, 592 (1998)).  Accepting the allegations in the Complaint as true, namely that the Agents retaliated against the Stoneciphers for their protected speech, it would not have been reasonable for the Agents to believe that their conduct did not infringe on the Plaintiffs' First Amendment rights.  The Court, therefore, finds that Plaintiffs have pleaded adequate facts to satisfy the second part of defeating a qualified immunity defense.  Accordingly, Count IX survives the Agents' motion to dismiss.

**E. State Constitutional Claim Against the Agents**

Count XI alleges a series of state constitutional claims against the collective defendants, including the Agents.  In certain circumstances, federal officials may be held personally liable for

monetary damages arising out of their commission of constitutional violations. *See Bivens*, 403 U.S. at 388. A *Bivens* claim arises when a federal government official, acting under color of federal law, violates an individual's rights under the United States Constitution. *Id.* A *Bivens* remedy does not, however, extend to the claims brought by the Plaintiffs under the New Mexico State Constitution. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Burman v. Streeval*, 2011 WL 3562999, at *3 (N.D. Ohio Aug. 11, 2011). Accordingly, the Court dismisses Count XI for failure to state a claim against the Agents.

### III. Motion to Dismiss the Deputies and County

Pursuant to 42 U.S.C. § 1983, Plaintiffs allege a series of federal claims against the Deputies and the County. The Plaintiffs also allege a series of state tort and constitutional claims against the Deputies and County under the New Mexico Tort Claims Act ("NMTCA").

### A. The Deputies

The Deputies move to dismiss all of the counts in the Complaint – except Counts III and X[11] – on the grounds that the blanket allegations against "all defendants" are insufficient to state a claim for relief under § 1983. To withstand a motion to dismiss, a complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. This plausibility requirement provides "not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Id.* at 555 n.3. In § 1983 cases, "it is particularly important . . . that the complaint make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Robbins v. Oklahoma*, 519

---

[11] Count III of the Complaint is directed solely at Agent Valles, (Doc. 18, ¶78)), and thus does not implicate the Deputies. Similarly, Count X is only directed at the Detention Center. *Id.* at ¶ 140.

F.3d 1242, 1249 (10th Cir. 2008) (citing *Twombly*, 550 U.S. at 565 n. 10).  Based on this standard, the Tenth Circuit dismissed a § 1983 claim requesting damages for violations of the plaintiff's due process rights because the complaint used "the collective term 'Defendants'" and, as a result, "it [was] impossible for any of these individuals [defendants] to ascertain what particular unconstitutional acts they [were] alleged to have committed."  *Id.* at 1250.

Alternatively, the Deputies move to dismiss the federal claims on the grounds of qualified immunity.  While the Stonecipphers sued the federal officers under *Bivens* and the Deputies under § 1983, "the qualified immunity analysis is identical under either."  *Wilson*, *supra*, 526 U.S. at 609.  Thus, because the Deputies have raised the defense of qualified immunity, the Plaintiffs must allege claims sufficient to meet the Tenth Circuit's "heavy two-part burden."  *Cram*, *supra*, 252 F.3d at 1128.  With these principles in mind, the Court turns to the Complaint in the instant case.

**1. Count I (Unreasonable Seizure and False Arrest):** Count I fails to identify the constitutional violation committed by each deputy.  It alleges that Anthony Stonecipher was detained and subsequently arrested without probable cause, (doc. 18, at ¶63), and that 'defendants' seized items from Plaintiffs' residence without authority.  *Id.* at ¶65.  Due to the use of the collective term 'defendants,' the Complaint fails to adequately specify which Deputies, if any, seized and detained Anthony Stonecipher.  The Complaint also fails to specify which Deputies, if any, unlawfully seized items from Plaintiffs' residence.[12]  As a result, Count I falls

---

[12] In their response to the Deputies' motion to dismiss, Plaintiffs allege that the Deputies retrieved several items outside the scope of the warrant, including intimate photos, a Kama Sutra book, photos of Anthony Stonecipher, medical records stored on his computer, and inert submunitions.  Doc. 44, pp. 19-20.  These factual allegations do not appear in the first or second amended complaint; thus, they fail to provide the Deputies with fair notice of who did what, *see Twombly*, 550 U.S. at 555 n.3.  The Plaintiffs may petition the Court for leave to amend the Complaint yet again pursuant to Fed. R. Civ. Pro. 15(a)(2).

short of the standard set forth in *Twombly*, 550 U.S. at 570, and *Robbins*, 519 F.3d at 1250; thus, the Court will grant the Deputies' motion to dismiss Count I.

Even if Count I identified the Deputies who participated in Anthony Stonecipher's detention, those Deputies are entitled to qualified immunity because they reasonably relied on the search warrant prepared by Agent Valles.  In *Ramirez v. Butte-Silver Bow County*, 298 F.3d 1022, 1027-28 (9th Cir. 2002),[13] the Ninth Circuit confronted a scenario where an ATF officer obtained a warrant and led other ATF agents in a search of the identified property.  *Id.* at 1025. Ultimately, however, the warrant turned out to be invalid due to a facial defect.  *Id.* at 1026. While the Ninth Circuit denied the lead ATF agent qualified immunity due to the flawed warrant, it nonetheless held that the remaining ATF line agents were entitled to rely on the representations of their leader regarding the validity of a warrant.  *Id.* at 1028.  Importantly, the Ninth Circuit noted that the ATF "line officers conducting [the] search cannot reasonably have been expected to know that [the warrant] was defective."  *Id.*  Accordingly, the Ninth Circuit held that the ATF line officers reasonably relied on the warrant and were entitled to qualified immunity.  *Id.*

The instant case is on all fours with *Ramirez*.  As noted previously, Agent Valles obtained the search warrant, but in doing so allegedly misinformed Magistrate Judge Molzen about Anthony Stonecipher's prior conviction.  As a result, the search may have been conducted pursuant to a warrant lacking probable cause for a violation of 18 U.S.C. § 922(g)(9).  However, there are no allegations in the Complaint that the Deputies helped obtain the search warrant, provided false information to Magistrate Judge Molzen, or otherwise knew that Anthony Stonecipher had not been convicted of a misdemeanor.[14]  Similarly, there are no allegations that

---

[13] While *Ramirez* is not binding on this Court, it was cited favorably by the Tenth Circuit in *Marshall v. Columbia Lee Regional Hospital*, 345 F.3d 1157, 1179 (10th Cir. 2003).

[14] The Complaint alleges that Anthony Stonecipher told "Agent Valles, [Agent] Estrada, and many other agents" that he had a SIS, not a conviction for domestic assault.  Doc. 18, ¶ 52. There are no allegations, however, that Anthony Stonecipher informed any named Deputies

the Deputies shared authority over the search with Agent Valles.  Rather, just like the line

officers in *Ramirez*, the Deputies in this case were merely assisting Agent Valles in the execution

of the warrant.  They were thus entitled to reasonably rely on the search warrant issued by

Magistrate Judge Molzen, *Ramirez*, 298 F.3d at 1028, and detain Anthony Stonecipher incident

to the search for firearms, *Muehler v. Mena*, 544 U.S. 93, 98 (2005) ("officers executing a search

warrant for contraband have the authority 'to detain the occupants of the premises while a proper

search is conducted.'") (quoting *Michigan v. Summers*, 452 U.S. 692, 705 (1981)); *United States

v. Sanchez*, 555 F.3d 910, 918 (10th Cir. 2009); *see also Salmon v. Schwarz*, 948 F.2d 1131,

1140–41 (10th Cir. 1991) (holding that an FBI agent who had no role in preparing the affidavit

for an arrest warrant enjoyed qualified immunity with respect to the execution of the facially

valid warrant).

      The Plaintiffs, however, argue that the detention of Anthony Stonecipher ripened into a

full custodial arrest without probable cause, thereby violating the Fourth Amendment.  "A police

officer may arrest a person without a warrant if he has probable cause to believe that person

committed a crime."  *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995); *Gerstein v. Pugh*, 420

U.S. 103, 111 (1975).  "Probable cause exists if facts and circumstances within the arresting

officer's knowledge and of which he or she has reasonably trustworthy information are sufficient

to lead a prudent person to believe that the arrestee has committed or is committing an offense."

*Jones v. City and County of Denver*, 854 F.2d 1206, 1210 (10th Cir. 1988).  Here, the Deputies

assisted the Agents in executing the search warrant, which itself was based on Magistrate Judge

Molzen's determination that probable cause existed for a violation of 18 U.S.C. § 922(g)(9).

There are no allegations that the Deputies knew or should have known that the warrant was based

on faulty information, thereby vitiating probable cause for a violation of 18 U.S.C. § 922(g)(9).

---

about his lack of a conviction or firearms disability.

Thus, the Deputies had reasonably trusty information to believe that Anthony Stonecipher had committed an offense, thereby justifying the arrest. *Id.* Because the Deputies' conduct did not violate the Fourth Amendment, they are entitled to qualified immunity.

    **2. Count II (Unreasonable Search):** Count II alleges that the "defendants" unreasonably searched Plaintiffs' residence without reasonable suspicion or probable cause. Doc. 18, ¶ 69. In support of this allegation, the Complaint states that the Deputies conducted a search of the interior of the home for drugs or narcotics, even though the warrant did not authorize a search for such items. *Id.* at ¶ 150. The Complaint further alleges that the Deputies exceeded the scope of their authority by failing to receive consent to enter Otero County and conduct a residential search. *Id.* at ¶ 160. Because these allegations provide the Deputies with fair notice of the federal claims against them, the Court concludes that the allegations in Count II are adequate to satisfy the pleading standard articulated in *Twombly* and *Robbins*.

    The issue then is whether the Deputies are entitled to qualified immunity regarding Count II. As noted above, the Deputies are entitled to qualified immunity in executing the search warrant prepared by Agent Valles. *See Ramirez*, 298 F.3d at 1028; *Salmon*, 948 F.2d at 1140–41. Thus, to the extent Count II is directed at the Deputies, it stands or falls on the allegation that the Deputies exceeded the scope of their granted authority by conducting a search outside of Doña Ana County, (doc. 18, ¶¶ 72, 160), and searched for items outside the scope of the warrant, (*id.* at ¶ 150).

    Plaintiffs first argue that the Deputies exceeded their authority by operating outside of their jurisdiction and without authorization from the Otero County Sheriff's Department. In *United States v. Medlin*, 842 F.2d 1194, 1196 (10th Cir. 1988), the Tenth Circuit stated that local law enforcement officers routinely aid ATF agents in the execution of federal search warrants and "such a practice is within the prerogative of ATF agents, has been condoned by the courts, and is permitted by statute." The Tenth Circuit further noted that "18 U.S.C. § 3105 does not

require that a person assisting an officer in the execution of a warrant be an officer acting within his or her jurisdiction." *Id.* Here, the search warrant was directed to "Any authorized law enforcement officer," Doc. 51, Ex. A, and was executed by Agent Valles with the assistance of the other named Agents, the Deputies, and the remaining "law enforcement officers." Because the Deputies acted in concert with Agent Valles, the Deputies' mere presence in Otero County, even though outside of their jurisdiction, does not render their conduct unreasonable, let alone warrant denying them qualified immunity. *Medlin*, 842 F.2d at 1196-97.

Plaintiffs also claim that the Deputies exceeded the scope of the search warrant by showing up at the residence with trained narcotics dogs, (doc. 18, ¶¶ 148-49), and subsequently conducting a search of the home for drugs and narcotics, (*id.* at ¶ 150). The scope of a search warrant is determined by employing "a standard of practical accuracy rather than technical precision." *United States v. Ortega–Jimenez*, 232 F.3d 1325, 1328 (10th Cir. 2000) (internal quotation marks omitted). Here, the warrant authorized a search of the residence for firearms, explosives, and related materials, but not drugs or narcotics. This reading is supported by Agent Valles' affidavit offered in support of the search warrant application, which does not mention drugs or narcotics. *Id.* at 1329. Thus, accepting as true the allegation that the Deputies searched the premise for drugs or narcotics, the Court concludes that Count II alleges a plausible violation of the Plaintiffs' Fourth Amendment rights. *United States v. Robertson*, 21 F.3d 1030, 1033 (10th Cir. 1994) ("A search is 'confined in scope to particularly described evidence relating to a specific crime for which there is demonstrated probable cause.'") (quoting *Voss v. Bergsgaard*, 774 F.2d 402, 404 (10th Cir. 1985)). Moreover, as it would have been clear to a reasonable officer in May of 2010 that exceeding the scope of a search warrant was unlawful, *see United States v. Angelos*, 433 F.3d 738, 745-46 (10th Cir. 2006), the constitutional right at issue was clearly established at the time of the Deputies' conduct. Thus, the Court concludes that Count II states a claim for relief which overcomes the Deputies' defense of qualified immunity.

24

**3. Count IV (Unlawful Entry):** Count IV alleges that the defendants, including the two Deputies, unlawfully entered the Stoneciphers' residence.  Doc. 18, ¶¶ 148-49.  As noted previously, however, the Deputies were entitled to reasonably rely on the search warrant prepared by Agent Valles and enter the residence.  *See Salmon*, 948 F.2d at 1140–41; *Ramirez*, 298 F.3d at 1027-28.

**4. Count V (Excessive Force)**: Count V alleges that the Defendants used excessive force when they took Anthony Stonecipher to the ground, at gunpoint, outside the residence.  Doc. 18, ¶98.  It is unclear which deputy, if any, committed this act.  Count V thus fails to adequately allege a claim against the Deputies and is thus dismissed pursuant to *Twombly*, 550 U.S. at 570, and *Robbins*, 519 F.3d at 1250.

**5. Count VI (Unreasonable Seizure and Wrongful Arrest)**: The Complaint alleges that the "defendants" seized Melissa Stonecipher, pointed several assault weapons at her during the seizure, extracted her out of the house, and placed her in handcuffs for at least three hours.  Doc. 18, at ¶¶35-38.  Again, it is unclear which deputy, if any, committed these acts.  Count VI thus fails to adequately allege a claim against the Deputies and is thus dismissed.  *Twombly*, 550 U.S. at 570; *Robbins*, 519 F.3d at 1250.

Even if the allegations in Count VI were adequate to state a claim against the Deputies, they are entitled to qualified immunity.  The Tenth Circuit has instructed courts to engage in a two-step inquiry to determine whether a detention amounts to an unlawful seizure under the Fourth Amendment.  First, the Court "must ascertain whether the detention was justified at its inception." *Gallegos v. City of Colorado*, 114 F.3d 1024, 1028 (10th Cir. 1997).  "The second step in determining the reasonableness of an investigative detention consists of determining whether the officers' actions are "'reasonably related in scope to the circumstances which justified the interference in the first place.'" *Id.* at 1028.

The Court finds the Complaint fails to allege a violation of the Fourth Amendment.  To begin with, the Deputies were justified in detaining Mrs. Stonecipher incident to the search warrant prepared by Agent Valles.  As noted previously, the Deputies relied in good faith on the search warrant prepared by Agent Valles and issued by Magistrate Judge Molzen.  *United States v. Williams*, 897 F.2d 1034, 1038-39 (10th Cir. 1990).  There are no allegations that the Deputies were told or otherwise knew that the search warrant was based on unreliable information.  Thus, the Deputies did not act unreasonably in detaining Mrs. Stonecipher, an occupant of the premises, incident to the search.  *Summers*, 452 U.S. at 705 (holding that officers executing a search warrant for contraband have limited authority "to detain the occupants of the premises while a proper search is conducted."); *Sanchez*, 555 F.3d at 918.

Mrs. Stonecipher, however, argues that her detention ripened into a formal arrest and thus was unreasonable under the second step of *Gallegos*.  In support of this argument, Mrs. Stonecipher emphasizes the fact that she was threatened by the Deputies' search dogs and confined for the duration of the search – at least three hours.  Mrs. Stonecipher thus claims that the detention was not a limited detention as permitted by *Summers,* but rather a full-custodial arrest without probable cause and in violation of the Fourth Amendment.

Mrs. Stonecipher's argument fails as a matter of law in light of the Supreme Court's decision in *Muehler v. Mena*, 544 U.S. 93 (2005).  There, a SWAT team executed a search warrant on the house where Ms. Mena was sleeping.  *Id.* at 95-96.  The SWAT team entered her bedroom, handcuffed her at gunpoint, and confined her in a backyard garage for the duration of the search, which lasted two or three hours.  *Id.* at 96, 100.  Because "[a]n officer's authority to detain incident to a search is categorical[,]" the Court held that Mena's "detention for the duration of the search was reasonable under *Summers* because a warrant existed to search 1363 Patricia Avenue and she was an occupant of that address at the time of the search." *Id.* at 96. Here, the Deputies reasonably relied on the warrant prepared by Agent Valles for the

26

Stonecipher's residence.  Even though the Deputies are accused of detaining Mrs. Stonecipher for the duration of the search, their conduct easily fits within the conduct deemed reasonable in *Muehler*.  Moreover, contrary to Mrs. Stonecipher's argument, the presence of the Deputies' search dogs did not constitute an unreasonable show of force.[15]  Accordingly, given the facts of *Meuhler* and its categorical holding, the Court is unable to conclude that the Deputies' detention of Mrs. Stonecipher ripened into an unreasonable arrest or otherwise violated the Fourth Amendment.  The Deputies are thus entitled to qualified immunity on Count VI.

**6. Count VII (State-Law Tort Claims):** Count VII of Plaintiffs' complaint alleges state-law tort claims, including battery, false imprisonment, invasion of privacy, intentional infliction of emotional distress, and trespass.  Doc. 18, ¶¶ 97-101.  Plaintiffs direct these claims broadly at the defendants and fails to identify which deputies committed what acts.  Count VII thus fails to adequately allege a claim against the Deputies and is thus dismissed.  *Twombly*, 550 U.S. at 570; *Robbins*, 519 F.3d at 1250.[16]

---

[15]Plaintiffs appear to argue that the threatening presence of the Deputies' search dogs constituted an unreasonable show of force under *Holland v. Harrington*, 268 F.3d 1179, 1187 (10th Cir. 2001).  *Holland* involved a SWAT team detaining, at gunpoint, several bystanders' children who were not suspected of a crime, all in the course of executing a misdemeanor warrant.  *Id.* at 1183, 1192–93.  The Tenth Circuit explained, "while the SWAT Team's initial show of force may have been reasonable under the circumstances, continuing to hold the children directly at gunpoint after the officers had gained complete control of the situation outside the residence was not justified under the circumstances at that point."  *Id.* at 1193. In the instant case, however, the Complaint does not specifically allege that a particular deputy or any deputy at all pointed a firearm at Mrs. Stonecipher.  Contrary to Mrs. Stonecipher's argument then, the presence of the search dogs actually suggests that the Deputies used a reasonable amount of force in detaining Mrs. Stonecipher.  This is particularly true given that the Supreme Court in *Muehler* found reasonable the SWAT team's detention of Ms. Mena at gunpoint – a much greater show of force than the mere presence of the search dogs alleged in the instant Complaint.  544 U.S. at 96.

[16] The parties agree that notice is not required for claims brought under the NMTCA against officers acting in their individual capacity.  *See Niederstadt v. Town of Carrizozo*, 182 P.3d 769, 789 (N.M. App. 2008) ("Significantly, the notice provision says nothing about persons who claim damages from or file actions solely against individual governmental employees.").

**7. Count VIII (Second Amendment Claim):** In Count VIII, Plaintiffs allege that the defendants deprived them of their Second Amendment right to bear arms. *See Heller*, 554 U.S. at 570. None of the allegations in Count VIII are specific to the Deputies, but rather are directed solely at the Agents. Doc. 18, ¶¶ 117-18. The Court thus concludes that the Plaintiffs have failed to state a Second Amendment claim against the Deputies, *see Iqbal*, 129 S. Ct. at 1949.

Even if the Complaint did state a claim against the Deputies, Plaintiffs have failed to meet the "heavy two-part burden" necessary to defeat the defense of qualified immunity. *Cram*, 252 F.3d at 1128. Specifically, as noted previously, Plaintiffs have failed to demonstrate the right at issue was clearly established at the time of the alleged violation. *See supra* section II.D.

**7. Count IX (First Amendment Claim):** In Count IX, Plaintiffs claim that the defendants violated their First Amendment right to free speech. Unlike the Agents, the Deputies do not move to dismiss this count on the grounds that Plaintiffs have failed to establish the element of causation necessary to a First Amendment retaliation claim. *See supra* section II.C. Rather, the Deputies argue that Count IX, by using the collective term "defendants," fails to adequately state a claim against the Deputies. The Court agrees based on the standard announced in *Twombly*, 550 U.S. at 570, and *Robbins*, 519 F.3d at 1250. Furthermore, the factual allegations in support of Count IX only appear to be directed at the agents. *See, e.g.*, Doc. 18, ¶ 52 (alleging that Anthony Stonecipher told "Defendant Carlos Valles, John Estrada, and many other agents" that he did not have a prior conviction). As a result, the pleaded factual content fails to support a First Amendment claim against the Deputies. *Twombly*, 550 U.S. at 555 ("a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do") (quotations omitted). The Court thus grants the Deputies' motion to dismiss Count IX.

Thus, because the Complaint alleges claims against the Deputies in their individual capacities, Doc. 18, ¶ 6, the Court will not dismiss Count VII for failure to provide notice.

28

**8. Count XI (State Constitutional Claims**): The Deputies move to dismiss the state constitutional claims for failure to state a claim and on the grounds of qualified immunity.  The Court, however, recognized that the Plaintiffs have a valid federal claim against the Deputies for an unreasonable search.  *See supra* Section III.A.2.  Accordingly, because the Complaint alleges a parallel violation of the Plaintiffs' rights under Article II, section 10 of the New Mexico State Constitution, the Court will deny the Deputies' motion to dismiss Count XI.

## B. The County

The County moves to dismiss the federal claims brought against it under § 1983 as well as the state constitutional and tort claims brought against it under the NMTCA.

**1. Section 1983 Claims**: Plaintiffs seek to impose liability on the County under § 1983 in Counts II and X of the Complaint.  Doc. 18,¶¶ 74, 132-41, 154-59.  Specifically, Count II alleges that the County is liable for the strip search of Anthony Stonecipher at the Detention Center while Count X alleges that the conditions at the Detention Center rise to the level of cruel and unusual punishment.  The Complaint, however, does not name any individual detention officers as a defendant.  The issue then is whether the Complaint alleges the existence of a County policy or custom that caused the constitutional violations.

Municipal governments may incur liability under § 1983 when "the action that is alleged to be unconstitutional implements or executes a policy, statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers."  *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978).  Because vicarious liability will not open a municipality to liability simply when one of its officers has committed a constitutional violation, *id.* at 694, "[i]t is only when the execution of the government's policy or custom . . . inflicts the injury that the municipality may be held liable under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citation omitted).  Here, the Complaint alleges that the Detention Center denied Anthony Stonecipher his three mandatory phone calls and prescription medications.  Doc. 18, ¶¶134, 137,

154-59.  The Complaint further alleges that the Detention Center conducted a gratuitous strip

search of Anthony Stonecipher.  *Id.* at ¶¶ 74, 138.  While the Complaint alleges that the

Detention Center was the proximate cause of Athony Stonecipher's injuries, it fails to identify

any policy or custom adopted or promulgated by the County that caused the alleged

constitutional violations in Counts II and X.

     **2. State Claims Under the NMTCA**: Count VII alleges state-law tort claims, including

battery, false imprisonment, invasion of privacy, intentional infliction of emotional distress, and

trespass.  Doc. 18, ¶¶ 97-101.  Count XI also alleges a series of state constitutional claims against

the collective defendants.  Plaintiffs direct both of these claims against the County under the

NMTCA, which "provides governmental entities and public employees acting in their official

capacities with immunity from tort suits unless the Act sets out a specific waiver of that

immunity."  *Weinstein v. City of Santa Fe ex rel. Santa Fe Police Dep't*, 916 P.2d 1313, 1316

(N.M. 1996).  The NMTCA also waives immunity for  "deprivation of any rights, privileges or

immunities secured by the constitution and laws of the United States or New Mexico."  NMSA

1978, § 41-4-12.

     In order to be entitled to file suit against the County under the NMTCA, Plaintiffs must

have given prior proper notice to the Doña Ana County Clerk within ninety days of the

occurrence giving rise to their alleged claims, "unless the government entity had actual notice of

the occurrence."  NMSA 1978, §41-4-16.  Plaintiffs do not allege that they gave notice to the

County or that the County had actual notice of the occurrences giving rise to the claims in Count

VII or XI.

     Fed. R. Civ. P. 9(c) provides, "[i]n pleading conditions precedent, it suffices to allege

generally that all conditions precedent have occurred or been performed."  This sentence implies

a requirement that the Complaint generally plead compliance with conditions precedent.

Moreover, the Tenth Circuit has dismissed a claim for failure to plead compliance with the

Colorado Governmental Immunity Act's notice provision.  *Aspen Orthopaedics & Sports Medicine, LLC v. Aspen Valley Hospital District*, 353 F.3d 832, 841-42 (10th Cir. 2003) ("In the context of a motion to dismiss, pleading compliance with the notice provisions of the CGIA is de facto jurisdictional.").  Accordingly, because the Complaint fails to generally allege compliance with the notice requirements of the NMTCA, the Court will dismiss the state law claims in County VII and XI insofar as they are directed at the County.  *Id.* at 41-4-16(B); *City of Las Cruces v. Garcia*, 102 N.M. 25, 27 (N.M. 1984).

Dated this 5th day of January, 2012**.**

_____
BRUCE D. BLACK
UNITED STATES DISTRICT JUDGE